1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

6
7
8

| JUAN JOSE AMESQUITA, | ) | 1:05-cv-00055-OWW-TAG HC |
|---|---|---|
| Petitioner, | ) | REPORT AND RECOMMENDATION RE: |
| v. | ) | RESPONDENT'S MOTION TO DISMISS |
| | ) | AMENDED PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS  (Docs. 7 and 15) |
| ROD HICKMAN, | ) | |
| Respondent. | ) | |

9
10
11
12
13
14

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The instant petition was filed on January 12, 2005.  (Doc. 1).  On April 21, 2005, the Court issued an order requiring Petitioner to file an amended petition.  (Doc. 6)  On May 11, 2005, Petitioner filed his amended petition.  (Doc. 7).  On December 12, 2005, after conducting a preliminary screening of the amended petition, the Court ordered Respondent to file either an answer to the amended petition or a motion to dismiss.  (Doc. 13).  On February 14, 2006, Respondent filed a motion to dismiss based on Petitioner's alleged failure to comply with the one-year statute of limitations provided for in 28 U.S.C. § 2244(d)(1), a motion based upon the absence of sufficient tolling of the limitations period during the course of four prior state habeas petitions filed by Petitioner.  (Doc. 15).

On February 24, 2006, a proof of service of Petitioner's opposition to the motion to dismiss was filed.  (Doc. 20.)  The proof of service purported to attach--but did not include--a

1

1   copy of the opposition.  (Doc. 20).[1]  On April 4, 2006, in response to that opposition, Respondent

2   filed a reply brief which essentially re-briefed the motion based on the existence of five, rather

3   than four, prior habeas petitions filed by Petitioner.  (Doc. 23).  Finally, on April 14, 2006,

4   Petitioner filed his opposition to the reply brief, which he characterized as an opposition to

5   Respondent's "Second Motion to Dismiss of April 4, 2006."  (Doc. 26).  Attached to this

6   opposition are a series of documents purporting to establish that the running of the statute of

7   limitations was tolled during the pendency of the five state habeas proceedings that Petitioner

8   had filed.  (Doc. 26).

9                                          PROCEDURAL HISTORY

10       Petitioner was convicted in the Fresno County Superior Court of the following: one count

11   of first degree murder (Cal. Pen. Code § 187)[2] and two counts of being an ex-felon in possession

12   of a firearm (Cal. Pen. Code § 12021(a)(1)).  (First LD 1).[3]  The jury also found true a series of

13   sentence enhancements which, together with the underlying substantive crimes, resulted in a total

14   indeterminate sentence of 100-years-to-life for counts one (murder) and three (felon in

15   possession), and a consecutive determinate term of twenty-one years for the sentence

16   enhancements.  (Id.).[4]  Petitioner thereafter commenced his direct appeal in state court, which

17   concluded when the California Supreme Court denied his petition for review on June 21, 2000.

18   (First LD 4.)

19       Upon denial of direct review by the California Supreme Court, the Petitioner's first legal

20   step was to file a federal habeas petition on November 30, 2000.  Amesquita v. Adams, 1:00-cv-

21   07060-OWW-SMS ("Amesquita I").  On December 21, 2000, Petitioner filed a motion for leave

22   to amend in which he sought permission to exhaust various claims that were not presented to the

23

24       [1] This Court subsequently obtained, from Respondent, a copy of Petitioner's opposition to Respondent's
     motion to dismiss.

25
         [2]All references are to the California Penal Code.

26
         [3]References to documents lodged by Respondent on February 14, 2006 (Doc. 17) will be cited as "First LD
27   ___."  References to documents lodged by Respondent April 4, 2006 (Doc. 24), will be cited as "Second LD ___."

28       [4] Imposition of sentence on count two (felon in possession) was stayed pursuant to Pen. Code § 654.  (First
     LD 1).

state court and to amend his petition.  (Amesquita I at Doc. 5).  On February 6, 2001, uncertain as

to the intent of Petitioner's motion to amend, the Court issued an order that offered Petitioner

several options: (1) proceed with his petition in its current state or (2) request that his petition be

dismissed so that he may return to the state courts in order to exhaust his claims.  (Amesquita I at

Doc. 6, p. 3).  The Court explicitly warned Petitioner, however, that "[a] new federal petition

would have to be filed" in the future and that "[i]n the meantime . . . the [AEDPA] limitations

period would continue to run."  (Id.)  In response to this order, Petitioner moved to dismiss

Amesquita I without prejudice and, on July 6, 2001, it was so ordered.  (Amesquita I at Doc. 9).

     Having voluntary dismissed his first federal petition, Petitioner next filed a series of five

post-conviction state habeas petitions, as follows:

     1.    March 1, 2001 (Fresno County Superior Court); denied March 8, 2001 (First LD 5,

Second LD 1);

     2.    March 20, 2001 (Court of Appeal, Fifth Appellate District ("5th DCA"));

          denied May 10, 2002 (First LD 6-7);

     3.    September 3, 2002 (Fresno County Superior Court); denied September 16, 2002

(Second LD 2-3);

     4.    October 21, 2002 (5th DCA); denied November 17, 2003 (First LD 8-9);

     5.    January 27, 2004 (California Supreme Court); denied November 17, 2004 (First LD

10-11).

     Thereafter, and upon completion of his state habeas proceedings, Petitioner filed the

instant case as a new federal habeas petition, on January 12, 2005.  (Doc. 1).  It is this case that

Respondent now seeks to dismiss.  (Doc. 23).  Respondent's motion to dismiss contends that

Petitioner filed the instant petition beyond the one-year statute of limitations contained in the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1)(A).

Specifically, Respondent makes the following arguments:

     a.    Petitioner's second state post-conviction petition failed to toll the AEDPA limitations

period because it was not a "properly filed" petition as required by 28 U.S.C. § 2244(d)(2).

Absent tolling, and because Petitioner's third, fourth and fifth petitions were therefore all filed

1  more than one-year after the AEDPA limitations period expired (and therefore had nothing to

2  toll), Petitioner's federal habeas petition too is barred.  (Doc. 23, pp. 3-5).

3       b.   Even if Petitioner's second state post-conviction petition was "properly filed" and

4  therefore tolled the AEDPA limitations period, there was a 110-day delay between the denial of

5  this second petition on May 10, 2002 and the filing of Petitioner's third petition on September 3,

6  2002.  According to Respondent, this 110-day delay was "unreasonable" under <u>Evans v. Chavis</u>,

7  ___ U.S. ___, 126 S. Ct. 846 (2006).  (Doc. 23, pp. 5-7).

8       c.   Finally, Respondent contends that even if one were to toll the AEDPA limitations

9  period continuously from February 27, 2001 (the proof of service date on Petitioner's first

10 petition) through November 17, 2003 (the date of denial of Petitioner's fourth petition), thereby

11 extending the federal filing deadline for an equivalent period of time, Petitioner would still be

12 time-barred.  This is so, according to Respondent, because Petitioner's fifth and final state

13 petition was denied by the California Supreme Court as untimely and, having been so denied,

14 cannot have tolled the limitations period for any additional length of time.  As such, a federal

15 petition filed on January 12, 2005 would be well beyond the one-year limitations period and, *a

16 fortiori*, untimely.  (Doc. 23, pp. 7-8).

17      For the reasons set forth below, the Court concludes that the instant petition was filed

18 beyond the one-year statute of limitations period and should, therefore, be dismissed.

19 _____DISCUSSION_____

20      In determining the validity of Respondent's motion, the Court need not consider the

21 efficacy of Respondent's first two arguments set forth above, i.e., whether Petitioner's second

22 state post-conviction petition was "properly filed," or whether, as a matter of first impression, a

23 110-day delay between Petitioner's second and third such petitions was "unreasonable" under

24 <u>Evans v. Chavis</u>, 126 S. Ct. 846.  Instead, addressing solely Respondent's third argument, the

25 Court finds that Respondent is correct that, even giving Petitioner the benefit of the doubt with

26 respect to Respondent's first two arguments, thereby tolling the AEDPA limitations period for

27 the entire period from Petitioner's delivery of his first petition for state post-conviction relief on

28 February 27, 2001 through the time his fourth such petition was denied on November 17, 2003,

Petitioner's federal habeas petition is still time-barred.  Moreover, the Court concludes that Petitioner is not entitled to equitable tolling that would make the petition timely under the AEDPA.

###### A.  Procedural Grounds for Motion to Dismiss

On February 14, 2006, Respondent has filed a Motion to Dismiss the petition as being filed outside the one year limitations period prescribed by 28 U.S.C. § 2244(d)(1).  (Doc. 15.) Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ."  Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-603 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F. Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitation period.  Because Respondent's Motion to Dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

###### B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the AEDPA, which imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  Lindh v. Murphy, ///

521 U.S. 320, 326-327, 117 S. Ct. 2059 (1997). The original petition in this case was filed on

January 12, 2005 (Doc. 1), and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a

federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244,

subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In this case, the petition for review was denied by the California Supreme Court on June

21, 2000. Thus, direct review would conclude on September 19, 2000, when the ninety-day

period for seeking review in the United States Supreme Court expired. Bowen v. Roe, 188 F.3d

1157, 1159 (9th Cir. 1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998). The one-year

period would commence the following day, September 20, 2000, and Petitioner would have until

September 20, 2001, absent applicable statutory or equitable tolling, within which to file his

federal petition for writ of habeas corpus.

///

///

1     C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

2         Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed

3  application for State post-conviction or other collateral review with respect to the pertinent

4  judgment or claim is pending shall not be counted toward" the one- year limitation period.

5  28 U.S.C. § 2244(d)(2). In Nino v. Galaza, the Ninth Circuit held that the "statute of limitations

6  is tolled from the time the first state habeas petition is filed until the California Supreme Court

7  rejects the petitioner's final collateral challenge."[5]  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir.

8  1999); see also, Taylor v. Lee, 186 F.3d 557 (4th Cir. 1999); Barnett v. Lemaster, 167 F.3d 1321,

9  1323 (10th Cir. 1999).  The Court reasoned that tolling the limitations period during the time a

10  petitioner is preparing his petition to file at the next appellate level reinforces the need to present

11  all claims to the state courts first and will prevent the premature filing of federal petitions out of

12  concern that the limitation period will end before all claims can be presented to the state supreme

13  court.  Id. at 1005.  However, the limitations period is not tolled for the time such an application

14  is pending in federal court.  Duncan v. Walker, 533 U.S. 167, 181-182, 121 S. Ct. 2120 (2001);

15  Fail v. Hubbard, 315 F.3d 1059, 1060 (9th Cir. 2002)(as amended).

16         In Saffold v. Newland, 250 F.3d. 1262 (9th Cir. 2001)(as amended), vacated sub nom.,

17  Carey v. Saffold, 536 U.S. 214, 122 S. Ct. 2134 (2002), the Ninth Circuit examined the question

18  as to whether the limitations period tolls during the time a state habeas corpus petition is pending

19  when the state court denies the petition on both procedural grounds and on the merits.  Saffold v.

20  Newland, 250 F.3d 1262 (9th Cir. 2002)(as amended).  The Ninth Circuit held that where a state

21  court addresses the petition's merits, tolling under 28 U.S.C. § 2244(d)(2) was appropriate.  Id. at

22  1267.

23  ///

24

25         [5]In California, the Supreme Court, intermediate Courts of Appeal, and Superior Courts all have original
26  habeas corpus jurisdiction. See, Nino 183 F.3d at 1006, n. 2 (9th Cir. 1999).   Although a Superior Court order
   denying habeas corpus relief is non-appealable, a state prisoner may file a new habeas corpus petition in the Court of
27  Appeal. Id. If the Court of Appeal denies relief, the petitioner may seek review in the California Supreme Court by
   way of a petition for review, or may instead file an original habeas petition in the Supreme Court. See, id.

28

The United States Supreme Court, however, in <u>Carey v. Saffold</u>, 536 U.S. 214, 122 S. Ct. 2134 (2002), vacated the Ninth Circuit's ruling, and, in so doing, took a much more restrictive view of delays between state court habeas filings and a much less sympathetic view of when a state court's denial is on the merits.  In <u>Saffold</u>, the Supreme Court, addressing the four and one-half month delay between a state court of appeal denial of a habeas petition and the filing of a petition in the California Supreme Court, rejected the Ninth Circuit's reliance on language in the state supreme court's ruling as a "bellwether" that the state court's denial had addressed the merits, thus implicitly indicating that the was petition timely:

> Given the variety of reasons why the California Supreme Court may have included the words "on the merits," those words cannot by themselves indicate that the petition was timely. And the Ninth Circuit's apparent willingness to take such words as an absolute bellwether risks the tolling of the federal limitations period even when it is highly likely that the prisoner failed to seek timely review in the state appellate courts....The Ninth Circuit's rule consequently threatens to undermine the statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims.

<u>Saffold</u>, 536 U.S. at 226 (citations omitted).  The Supreme Court also emphasized that only a "timely" appeal tolls AEDPA's statute of limitations period, and that "unreasonable" delays are not "timely."  <u>Saffold</u>, 536 U.S. at 214.

In <u>Evans v. Chavis</u>, 126 S. Ct. 846, the Supreme Court held that, when the state court denies the habeas petition without any explanation or indication as to timeliness, federal district courts must conduct their own inquiries regarding whether the state habeas petitions were filed within a "reasonable" time.  By contrast, where there is a "clear indication that a particular request for appellate review was timely or untimely," there is no need to conduct such an independent examination.  <u>Evans</u>, 126 S. Ct. at 852.

Applying these principles here, the Court concludes that Petitioner's fifth and final state court petition did not toll the running of the statutory period.  This Court need not engage in an extended analysis of what constitutes a "reasonable" delay post-<u>Evans v. Chavis</u>, or whether the

delays in this case were reasonable under <u>Evans v. Chavis</u>, because the California Supreme Court

denied Petitioner's fifth  petition as untimely by citing <u>People v. Robbins</u>, 18 Cal.4th 770, 780,

77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998).  (First LD 11.)   <u>See</u> <u>Graves v. Carey</u>, 2006 WL

2329429, *6 at n.10 (N.D. Cal. August 9, 2006) ("the only plausible reading of the California

Supreme Court's citation to <u>Robbins</u> is that the petition was denied for untimeliness"); <u>Johnson</u>

<u>v. Kernan</u>, 2006 WL 1550007, *4 (E.D. Cal. June. 1, 2006) (a citation to <u>Robbins</u> "refer[s] to the

petition's untimeliness.  Under <u>Pace</u> and <u>Evans v. Chavis</u>, Petitioner is not entitled to any

statutory tolling for the time the untimely petition was pending").  Thus, because the state

supreme court gave a "clear indication" of untimeliness, this Court need not conduct any further

examination into the question: Petitioner's delay in filing the fifth petition was  "unreasonable,"

as expressly found by the California Supreme Court, and thus the petition was not "timely" or

"properly filed" for purposes of tolling AEDPA's one-year statute of limitations.  <u>Evans</u>, 126 S.

Ct. at 852; <u>Saffold</u>, 536 U.S. at 214.

   That being the case, the instant Petition is untimely.  As mentioned, the original one-year

period commenced to run on September 20, 2000.  At the time Petitioner mailed or delivered his

first petition on February 27, 2001, 160 days had already run on Petitioner's one-year period, thus

leaving Petitioner with 205 days remaining.  The period tolled by the pendency of  "properly

filed" state habeas proceedings (i.e., the first four petitions) concluded with denial of the fourth

petition on November 17, 2003.  At that time, the remaining 205-day period commenced to run

and was not tolled by the fifth petition because it was not "properly filed," i.e., it was "untimely."

The 205 days expired on June 9, 2004.  The original petition in this case was not filed until

January 12, 2005, over seven months *after* the running of the AEDPA's one-year period.

Accordingly, absent equitable tolling, the instant proceedings are untimely under AEDPA.

1        D.  Petitioner Is Not Entitled To Equitable Tolling

2        The limitations period is subject to equitable tolling if "extraordinary circumstances

3   beyond a prisoner's control" have made it impossible for the petition to be filed on time.

4   Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), citing Alvarez-

5   Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), cert denied, 522 U.S. 814, 118 S.

6   Ct. 60, 139 (1997), abrogated on other grounds, Woodford v. Garceau, 538 U.S. 202, 123 S. Ct.

7   1398 (2003).  "When external forces, rather than a petitioner's lack of diligence, account for the

8   failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."

9   Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002)(quoting Miles v. Prunty, 187 F.3d 1104, 1107

10  (9th Cir. 1999)).  In Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001), reversed on other grounds

11  upon rehearing en banc, 295 F.3d 1046 (9th Cir. 2002), the Ninth Circuit concluded that the

12  petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate

13  cause of his untimeliness."  Recently, the Ninth Circuit reaffirmed this rule in Espinoza-

14  Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005).  In that case, the Ninth Circuit

15  pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" and that

16  the petitioner "bears the burden of showing that equitable tolling is appropriate."  Id.

17       At the same time, the Ninth Circuit noted that the United States Supreme Court's

18  decision in Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005), in which the

19  equitable tolling standard was framed "in less absolute terms":

20          Generally, a litigant seeking equitable tolling bears the burden of establishing
            two elements: (1) that he has been pursuing his rights diligently, and (2) that
            some extraordinary circumstance stood in his way.

21  Espinoza v. Matthews, 432 F.3d at 1026 at n.5, quoting Pace, 125 S. Ct. at 1814.  The Ninth

22  Circuit declined to decide whether Pace had "lowered the bar somewhat" because it concluded

that petitioner had met the "more demanding" articulation found in Ninth Circuit case law.  Id.
at 1027.

In the instant case, Petitioner does not specifically assert equitable tolling in his
opposition to Respondent's Motion to Dismiss.  Nevertheless, Petitioner does assert the
following concerns that occurred during the course of his prior state (and federal) habeas
petitions:

1.   Petitioner timely filed a federal habeas petition in  Amesquita v. Adams, 1:00-cv-
07060-OWW-SMS, but he dismissed that petition in order to first exhaust his state remedies.

2.   Petitioner experienced a delay in obtaining portions of his attorney-client file, parts of
which Petitioner claims not to have received to this date.

3.   In denying his first petition on March 8, 2001, the Fresno County Superior Court did
not inform petitioner that he was barred from going to the appellate court with another petition.

4.   After Petitioner filed his second petition with the 5th DCA, that court, after asking
for declarations from trial and appellate counsel and from Petitioner himself, ultimately denied
his second petition on May 10, 2002, and never informed Petitioner that he was in the wrong
court or that his petition was untimely.

5.   Petitioner was in the "hole" when his second petition was denied and he could not get
access to his legal papers.  Petitioner was later transferred to another prison, put in the hole again,
and was not reissued his property until June or July of 2002, whereupon he filed his third petition
on September 3, 2002.

6.   The Fresno County Superior Court, in denying Petitioner's third petition on
September 16, 2002, did not tell Petitioner that he had filed in the wrong court or that his petition
was untimely.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.    When the 5th DCA denied Petitioner's fourth petition on the merits on November 17, 2003, it did not tell him that it was filed in the wrong court or barred as untimely.

8.    Petitioner sought review in the California Supreme Court on December 17, 2003, but his petition for review was not received by the Supreme Court until December 19, 2003, upon which the clerk of the Supreme Court sent Petitioner forms and instructions, and Petitioner thereafter filed a petition for habeas corpus relief in the California Supreme Court on January 27, 2004, which was denied as untimely.  Petitioner was not told by the clerk that his petition was in the wrong court or that a habeas petition would be untimely.  Likewise, the California Supreme Court itself did not tell or instruct Petitioner that he was in the wrong court or that his petition was barred as untimely.

The first of the above-stated potential bases for equitable tolling pertains to the prior (timely) federal habeas petition filed, and later dismissed, by Petitioner.  See Amesquita v. Adams, 1:00-cv-07060-OWW-SMS.  Although not articulated by Petitioner, it might be argued that Petitioner was somehow prejudiced when, upon being given the option by the district court, he elected to dismiss this petition.  However, in Brambles v. Duncan, 412 F.3d 1066 (9th Cir.), cert. denied, 126 S. Ct. 485 (2005), the Ninth Circuit explicitly refused to find equitable tolling in a similar--but significantly more severe--situation.

In that case, and upon dismissing his first-filed federal habeas petition in order to pursue his state remedies, the petitioner was *already* barred by the AEDPA limitations period from filing again in federal court.  Id. at 1068-1069.  In declining to find equitable tolling, the circuit court noted that "while the court failed to inform the pro se [petitioner] of all of the consequences of having his entire petition dismissed, the court did not actively mislead [the petitioner], and no extraordinary circumstances existed beyond his control that would account for his failure to file."

Id. at 1068-1070 (citing and quoting Pliler v. Ford, 542 U.S. 225, 124 S. Ct. 2441 (2004)("'requiring district courts to advise a pro se litigant'. . . would 'force upon district judges the potentially burdensome, time-consuming, and fact-intensive task of making a case-specific investigation' of the applicable AEDPA limitations period").  Here, of course, Petitioner's right to seek federal habeas relief was not time-barred when he dismissed his first-filed complaint, nor was it time-barred through the time of decision of the fourth of Petitioner's five state petitions.  Under Brambles, there simply is no entitlement to equitable tolling.  See Fail v. Hubbard, 315 F.3d 1059, 1062 (9th Cir. 2001)(petitioner not entitled to equitable tolling for delay while unexhausted petition is pending in federal court).

The second of the asserted grounds for equitable tolling pertains to Petitioner's alleged inability to gain access to a complete copy of his attorney-client file.  However, Petitioner first moved for his attorney-client file on January 12, 2001, just 46 days before he delivered his first state court post-conviction petition.  (Doc. 26, Exh.5).  This motion was made to the trial court where, and after, Petitioner's original conviction had been entered.  (Id.)  Upon delivering his first petition 46 days later on February 27, 2001, the running of the AEDPA limitations period was tolled and it continued to be tolled through the decision on Petitioner's fourth state court petition on November 17, 2003.  (First LD 9).

In that first petition, and in every petition thereafter, it is evident that Petitioner was fully aware of and able to set forth the nature of his claims, including those pertaining to his relationship with his lawyer.[1]  Moreover, there is no indication that Petitioner sought access to

---

[1]  In each of Petitioner's state-court petitions, the issues raised were largely the same: (1) abuse of discretion in denying Marsden motion, (2) improper denial of Faretta motion, (3) improper denial of testimony regarding alleged gang member status of victim, (4) error in modification of a jury instruction, (5) prosecutorial misconduct and (6) error in instruction in the defense of necessity.  (See Second LD 1 (first petition), First LD 6 (second petition), First LD 2 (third petition), First LD 8 (fourth petition) and First LD 10 (fifth petition)).

1   files in any of his post-conviction proceedings.  Petitioner therefore presented the reviewing

2   courts with neither the opportunity nor the need to attempt to redress the issue for him, such as by

3   requesting an order for production of documents (during which all AEDPA-related time was

4   already tolled in Petitioner's favor).  See Pace v. DiGuglielmo, 544 U.S. at 417-418 (in order to

5   obtain equitable tolling, a petitioner must have been pursuing his rights diligently).  Under these

6   circumstances, it cannot be said that "but for" events beyond the control of Petitioner, he timely

7   would have filed his second federal habeas petition.  Allen v. Lewis, 255 F.3d at 801 (9th Cir.

8   2001) (petitioner "must show that the 'extraordinary circumstances' were the but-for and

9   proximate cause of his untimeliness").

10      Of the remaining potential bases for equitable tolling, those numbered three (3) through

11  seven (7) above are moot because each pertains to events that occurred during the handling of

12  Petitioner's first four petitions.  Insofar as Petitioner's AEDPA limitations period was *tolled*

13  during that entire time, i.e., from the time that Petitioner delivered his first petition (February 27,

14  2001) through the time his fourth petition was denied (November 17, 2003), any delay or

15  confusion occasioned by the processing of these four petitions during such tolling period had no

16  additional tolling consequences and is, therefore, irrelevant.  Likewise, any delay occasioned by

17  periods during which Petitioner was "in the hole," or being transferred from prison to prison and

18  without access to his papers, also was of no moment since all such time was tolled and has not

19  been counted against his AEDPA limitations period.

20      The only remaining potential basis for equitable tolling is that the California Supreme

21  Court denied Petitioner's request for review (Doc. 26, Exh. 35) and then, when Petitioner later

22  filed a habeas petition with the Supreme Court, denied that petition as well (Doc. 26, Exh. 37).

23  However, by their very nature these events--denial of a request for review as untimely and then

24

25

26

27

28

denial of a habeas petition itself as untimely--constituted findings of untimeliness within the

parameters of <u>Evans v. Chavis</u>, 126 S. Ct. at 852, findings which necessarily meant that

Petitioner had *not* been diligent in pursuing relief at that level of review.  Absent diligence on the

part of Petitioner, equitable tolling cannot exist.  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 125 S.Ct.

at 1814  (in order to obtain equitable tolling, a petitioner must have been pursuing his rights

diligently).

        As there exist no circumstances sufficient to justify equitably tolling the limitations

period, the Petition is untimely and should be dismissed.

## **RECOMMENDATION**

        Accordingly, the Court HEREBY RECOMMENDS as follows:

        1.  That Respondent's Motion to Dismiss (Doc. 15), be GRANTED; and,

        2.  The amended habeas corpus Petition (Doc. 7), be DISMISSED with prejudice for

        Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period.

        This Report and Recommendation is submitted to the Honorable Oliver W. Wanger, the

Senior United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C.

section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States

District Court, Eastern District of California.   Within fifteen (15) days after being served with a

copy, any party may file written objections with the court and serve a copy on all parties.  Such a

document should be captioned "Objections to Magistrate Judge's Report and Recommendation."

Replies to the objections shall be served and filed within five (5) <u>court</u> days (plus three days if

served by mail) after service of the objections.  The Court will then review the Magistrate

Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

///

objections within the specified time may waive the right to appeal the District Court's order.

<u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 25, 2006**                                  **_____/s/ Theresa A. Goldner_____**
**j6eb3d**                                                     UNITED STATES MAGISTRATE JUDGE